UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| CNEST Oregon Solutions, LLC, and Jiyu Song, | : | Case No. 1:14-cv-768 |
| | : | |
| Plaintiffs, | : | |
| | : | |
| vs. | : | |
| | : | |
| United States of America, and the United States Secret Service, | : | |
| | : | |
| Defendants. | : | |

**ORDER**

Before the Court is Defendants' motion to dismiss Plaintiffs' complaint.  (Doc. 12)

On September 30, 2014, Plaintiffs filed their complaint and petition, pursuant to 18

U.S.C. §983(e) and Fed. R. Crim. Proc. 41(g), seeking the release of a vehicle that was

seized and forfeited to the United States.  (Doc. 1)   Defendants contend that this Court

lacks subject matter jurisdiction to review the merits of the administrative forfeiture of an

automobile seized by the United States on September 17, 2013.  Plaintiffs oppose the

motion (Doc.  14), and Defendants filed a reply.  (Doc. 16)  For the following reasons,

the Court will grant Defendants' motion.

**FACTUAL BACKGROUND**

According to the complaint, CNEST is an automobile exporter that has been in

business since 2011.  CNEST purchases luxury automobiles in the United States, and

exports them to foreign jurisdictions.  CNEST, acting through Jiyu Song (an individual

who resides in China), purchased a 2014 Range Rover Sport vehicle from a Cincinnati

auto dealer in September 2013.  CNEST wired the purchase funds to Song, who paid

for the car and took possession of it with the intent of transferring title to CNEST. However, on September 17, 2013, Secret Service agents seized the car from Song in Mason, Ohio.  CNEST and Song submitted various requests to the Secret Service to return the vehicle, which were all denied.  Plaintiffs allege that the vehicle was lawfully acquired and fully paid for, and there is no evidence of any illegality in the underlying transaction.  CNEST asserts that it is an innocent owner of the vehicle, which was seized without a warrant and without probable cause.  Neither CNEST nor Song has been identified as a target of a criminal investigation, and no criminal charges have been filed against either of them.  Despite their attempts to reclaim the vehicle and their "substantial compliance" with applicable rules, the United States has not commenced a judicial forfeiture action or adjudicated their claims of constitutional violations and lack of notice of the forfeiture.

The complaint includes five claims for relief.  In Count One, Song alleges he did not receive notice of the seizure, that his signature on documents on September 17, 2013 were obtained under duress and without benefit of counsel, and that he is therefore entitled to a return of the vehicle.  Counts Two and Three allege violations of Plaintiffs' Fifth Amendment right to just compensation, and to adequate due process of law.  Count Four alleges that the Secret Service seized the vehicle in violation of the Fourth Amendment.  Count Five seeks a declaratory judgment that Song received inadequate notice, and that both Plaintiffs were not afforded adequate due process. They seek an order requiring the United States to allow them to make a claim for the vehicle, or ordering the vehicle to be returned to them.

Defendants' motion is supported by the declarations of John Clark, Special Agent

in Charge of the Secret Service Asset Forfeiture Branch, and of SA Jeffrey Schmitz, one of the agents involved in the events of September 17, 2013.  Attached to the declarations are the documents described in Plaintiffs' complaint, and upon which their claims arise, and the Court may consider them in ruling on Defendants' motion.

SA Clark attests that the agency's files and records concerning the vehicle seizure include a report that on September 12, 2013, the Cincinnati field office received a tip from the Cincinnati Land Rover dealer regarding a possible fraudulent vehicle purchase by "a straw purchaser for an auto exporter."  (Doc. 12-1, ¶6(a)).  On September 17, 2013, Special Agent Schmitz, SA Morgan Morgan and other agents went to the dealership to await the arrival of the suspected straw purchaser.  He arrived and was identified as Jiyu "Frank" Song.  The agents observed him purchase the Range Rover, and they followed him to his residence in Mason, Ohio.  When they arrived, Agents Schmitz, Morgan and Kevin Dye approached Song and advised him of his Miranda rights.  Song agreed to waive those rights, and waived his right to have a lawyer present while the agents questioned him.  Song signed a written waiver acknowledging these rights.  (Doc. 12-2, Schmitz Decl., Attachment 1)  The agents told Song that he was not under arrest and that he could stop the interview at any time.  Schmitz states that Song is a graduate of Miami University with a degree in accounting.  Song spoke English very well, and did not indicate to the agents that he had any problem with language, or that he did not understand what was happening.

Song gave the agents a verbal and a written statement about his activities with and on behalf of CNEST.  His hand-written statement states that he works for a company that

> ... ships cars to China.  Today I just got a Range Rover Sports HSE.  I purchase cars, then they call a truck driver to pick up a car.  I did this several times.  They send me check or wire me the money.  I made about couple hundred dollars to couple thousand dollars according to different cars.

Song described several prior purchases, and stated that he asked some of his friends to buy cars for the same company.  He also stated: "They [CNEST] told me to hide the truth that we are shipping the cars because the dealers won't sell us the cars if we tell them we're shippers.  I know Chinese market does not want to car to be in the market [sic] and the dealership gets fined if the cars they are selling are shipped."  (Schmitz Decl., Attachment 2)  When the agents finished questioning Song, he voluntarily released the vehicle to the agents, and signed an "Agreement to Surrender Property." (Doc. 12-1, Clark Decl., Attachment A) The agreement is signed by Song and witnessed by Agents Dye and Schmitz, and states that Song is the registered owner of the vehicle. It also states:

> I admit that the items/vehicles listed below were purchased unlawfully and are proceed of; violations of 18 U.S.C §§1343 and 1956.
>
> I hereby voluntarily relinquish ownership of this property/vehicle to the United States Government, Secretary of Homeland Security to dispose of in accordance with law.  I waive my rights to receive service of process and/or any other form of notice of abandonment proceedings or civil/administrative forfeiture actions initiated by the United States against the property/vehicle listed below.  I further agree not to file a claim or otherwise contest any forfeiture or abandonment proceedings initiated by the United States against the property listed below.
>
> I agree to release and hold harmless the United States, the Department of Homeland Security, the U.S. Secret Service, it's officers, employees and Agents, from any and all claims or causes of actions, of whatever kind, that might now exist or hereafter exist by reason of or growing out of, directly or indirectly, the seizure or surrender of the described property. I have not been coerced or threatened in any way, nor do I expect to gain reward or special consideration for completing this document.

-4-

(Clark Decl., Attachment A)

Plaintiffs' complaint alleges "upon information and belief, [that] Song's signature to the Agreement was neither knowing or voluntary, and was obtained in duress.  Song was provided with neither a certified translation of the Agreement nor the opportunity to confer with counsel."  (Doc. 1, ¶21)

On November 14, 2013, the United States sent a notice of forfeiture to CNEST, c/o Juan Yong Zhang.  (Clark Decl., Attachment C)  The notice informed CNEST that the vehicle had been seized for forfeiture.  It informed CNEST, as a potential interested party, that it had three options: (1) it could petition the Secret Service for the return or remission of the vehicle by filing a Petition for Remission/Mitigation in a form enclosed with the notice; (2) it could contest the forfeiture in U.S. district court by filing a Seized Asset Claim Form with the Secret Service; or (3) it could do nothing if it had no interest in the vehicle.  If CNEST chose the first option (petition for remission), it was instructed to send proof of its interest in the vehicle, together with a statement of facts justifying remission or mitigation.  The notice further instructed CNEST that if it disagreed with the forfeiture and wanted to proceed in federal district court, it must file a claim form and claim of ownership with the Secret Service by December 19, 2013.  If CNEST intended only to seek remission, it was not required to submit the claim form.  No separate notice of seizure and forfeiture was sent to Song.

The Secret Service issued a declaration of forfeiture of the vehicle on January 3, 2014, because no timely claim had been received.  (Clark Decl., Attachment L) 19 U.S.C. §1609(b) provides that a declaration of forfeiture "shall have the same force and effect as a final decree and order of forfeiture in a judicial forfeiture proceeding in a

district court of the United States."

On January 16, 2014, CNEST filed a Petition for Remission, claiming it was an innocent owner of the vehicle pursuant to 18 U.S.C. §983(d).  CNEST asserted that it lacked knowledge of any conduct giving rise to the forfeiture, and that there was no evidence of illegality in the underlying transaction.  (Clark Decl., Attachment H) The Secret Service denied the petition on May 14, 2014.  In its letter to CNEST's lawyer, the Secret Service states that "CNEST has failed to prove that it meets the criteria to qualify as an 'innocent owner' of the forfeited property as defined by federal law.  In order to qualify as an 'innocent owner,' a petitioner must prove that it had a legally cognizable interest in the seized property and that it did not know of the conduct giving rise to the forfeiture. ... Our investigation of CNEST's petition revealed that employees of CNEST were participants in the conduct that gave rise to the forfeiture.  In addition, CNEST has offered no supporting documentary evidence or sworn factual recitations to substantiate its claim of innocent ownership."  (Clark Decl., Attachment I)

CNEST filed a timely Petition for Reconsideration of the denial of its petition on May 23, 2014.  The same day, Song submitted a Seized Asset Claim Form pursuant to 18 U.S.C. §983.  A letter from Song's attorney accompanying his claim form asserts that Song did not receive a notice of seizure as required under Section 983(a), and that the final notice had not yet been published on the Government's forfeiture website. Song claimed a legally cognizable property interest in the vehicle, because he paid full purchase price and took title at the time of purchase.  He disclaimed any knowledge of any conduct giving rise to a forfeiture.  (Clark Decl., Attachment F)   The Government denied Song's claim on June 2, 2014 because it was not timely filed.  It also cited

Song's Agreement to Surrender the vehicle, in which he relinquished ownership and waived his rights to receive personal notice of the forfeiture.  (Clark Decl., Attachment G)   And on August 27, 2014, the Government denied CNEST's request for reconsideration, citing pertinent regulations requiring a reconsideration request to be supported by evidence not previously submitted that is material to the reason for the denial, or which shows that the original denial was clearly erroneous.  (Clark Decl., Attachment K)

Based on this record, Defendants move to dismiss under Fed. R. Civ. Proc. 12(b)(1) and 12(b)(6).  They contend that this Court lacks subject matter jurisdiction to review the merits of the administrative forfeiture of the vehicle.  The only issue that this Court could determine is whether the Secret Service complied with statutory and procedural notice requirements set forth in 18 U.S.C. §983(e), governing motions to set aside a forfeiture.  That section entitles someone who is entitled to written notice in a nonjudicial civil forfeiture proceeding, and who does not receive that notice, to seek an order setting aside the forfeiture.  A motion under this section is "the exclusive remedy for seeking to set aside a declaration of forfeiture under a civil forfeiture statute." CNEST received written notice and cannot proceed under that statute.  Song waived his right to notice, and has no basis to plausibly assert a lack of actual knowledge that the vehicle was seized on September 17, 2013. The Secret Service complied with the statutory and procedural notice requirements for proper administrative forfeiture of the vehicle, and therefore the Defendants seek dismissal of Plaintiffs' constitutional claims.

Plaintiffs disagree, and argue that this Court may review the denial of CNEST's petition for remission.  CNEST cites cases holding that a court may review whether an

administrative forfeiture proceeding satisfies due process rights, and argues that the Secret Service failed to consider its claim of innocent ownership.  See, e.g., Simons v. United States, 497 F.2d 1046, 1049 (9th Cir. 1974), noting that district courts lack jurisdiction to formally remit forfeitures, but may grant relief from unlawful forfeitures. CNEST stresses that it is not challenging the merits of the forfeiture, or whether there was probable cause to seize the vehicle: its claim is directed solely at the process employed to deny its remission petition.  Plaintiffs argue that this Court may review the Secret Service's exercise of its discretion regarding the forfeiture proceeding.  This is especially true regarding innocent owners who have been deprived of their property when the government fails to fully investigate or explain the reasons for denying such a claim.  Alternatively, Plaintiffs urge the Court to exercise equitable jurisdiction, because CNEST is an innocent owner who has been irreparably harmed by the loss of customer goodwill, and lacks an adequate remedy at law.  Song contends he has standing to pursue a Section 983(e) motion, or at least is entitled to an evidentiary hearing to contest the Secret Service's assertions that he voluntarily waived his right to notice.

## DISCUSSION

Standard of Review

A motion brought under Fed. R. Civ. Proc. 12(b)(1), seeking dismissal for lack of subject matter jurisdiction, can be a facial attack upon the sufficiency of the complaint, or upon the factual existence of subject matter jurisdiction.  A facial attack is based upon the allegations of the complaint, which the Court accepts as true.  But in reviewing a factual challenge to subject matter jurisdiction, the Court has broad discretion to consider evidence outside the pleadings, and may weigh the evidence to determine

whether the Court may exercise jurisdiction to hear the case.  Plaintiff bears the burden of establishing that subject matter jurisdiction exists.  Cartwright v. Garner, 751 F.3d 752, 759-760 (6th Cir. 2014).

In reviewing a motion to dismiss a complaint under Rule 12(b)(6), a court must accept the complaint's well-pleaded factual allegations.  A claim will survive if those allegations are "enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true."  Jones v. City of Cincinnati, 521 F.3d 555, 559 (6th Cir. 2008), citing Bell Atlantic Corp. v. Twombly, 550 U.S.544 (2007).  Twombly essentially retired Rule 8's permissive "no-set-of-facts" pleading standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  The Twombly court found that literal application of that standard impermissibly permits wholly conclusory claims to survive Rule 12 challenges.  And in Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Court expressly held that a complaint will survive a Rule 12 challenge only if its well-pleaded factual allegations are sufficient to state a claim for relief that is plausible on its face.  Facial plausibility requires pleading facts that permit a reasonable inference that the defendant is liable for the alleged misconduct.  If a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  Id. at 678 (quoting Twombly, 550 U.S. at 556-557).

This Court Lacks Jurisdiction to Review CNEST's Claims

The Civil Asset Forfeiture Reform Act of 2000 ("CAFRA") amended civil forfeiture statutes and regulations, including those contained in 18 U.S.C. §983.  Section 983(a)(1) states that in a nonjudicial civil forfeiture proceeding, the United States must

send written notice (a "personal notice letter") to interested parties no more than 60 days after the seizure. If the United States learns of the identity or interest of a party after the seizure but before a formal forfeiture declaration is entered, written notice must be sent no later than 60 days after the United States learns of that identity or interest. An interested party who receives notice can elect one of two methods to challenge the seizure and forfeiture. Section 983(a)(2) states that any such person may file a "claim" not later than the deadline set forth in the seizure notice; if the person does not receive that notice, the claim must be filed not later than 30 days after the date of final publication of the seizure notice. If a "claim" is timely filed, the United States must file a judicial forfeiture complaint in the appropriate district court.

If a person does not file a claim, he may administratively challenge the forfeiture by filing a petition for remission or mitigation of the forfeiture, pursuant to 19 U.S.C. §1608. In that case, the decision is committed to the broad discretion of the agency, and federal court review "... is limited only to a determination that the proceeding conformed with the requirements of due process." In re: Search Warrants for 27867 Orchard Lake Road, 553 F.Supp.2d 879, 882 (E.D. Mich. 2008).

Section 983(e) further provides:

(1) Any person entitled to written notice in any nonjudicial civil forfeiture proceeding under a civil forfeiture statute who does not receive such notice may file a motion to set aside a declaration of forfeiture with respect to that person's interest in the property, which motion shall be granted if–

(A) the Government knew, or reasonably should have known, of the moving party's interest and failed to take reasonable steps to provide such party with notice; and

(B) the moving party did not know or have reason to know of the seizure within sufficient time to file a timely claim.

. . .

(5) A motion filed under this subsection shall be the exclusive remedy for seeking to set aside a declaration of forfeiture under a civil forfeiture statute.

CNEST does not dispute that it received the November 14, 2013 written notice of forfeiture on November 15. CNEST does not mention in its complaint that it filed a "claim" with the Secret Service on January 3, 2014. A "claim" under Section 983(a)(2) must be filed no later than 35 days after the written notice. CNEST filed its claim well beyond that deadline, and the complaint does not challenge the Secret Service's denial of that untimely claim. CNEST therefore cannot satisfy the requirements of Section 983(e). See United States v. Comerica Bank, 384 Fed. Appx. 471 (6th Cir. 2010)(unpublished), affirming dismissal of bank's Section 983(e) motion because the bank conceded it received notice of forfeiture, and the bank failed to file a timely claim.

CNEST also claims that it was denied due process of law by the Secret Service's summary rejection of its petition for remission and its request for reconsideration. CNEST cites this Court's order in another judicial forfeiture action involving a different auto broker, arising out of the Secret Service's contention that the broker was engaged in wire or mail fraud by purchasing vehicles in the United States that were subsequently exported.[1] In an April 1, 2014 order in that case, this Court denied the defendant's motion to dismiss the judicial forfeiture complaint filed by the United States, but granted immediate release of the broker's bank account and two seized vehicles, after concluding that the United States had not shown probable cause to continue to hold the

---

[1] See United States v. Contents of Wells Fargo Bank Account, Case No. 1:13-cv-716.

seized assets pending trial.  CNEST argues that the vehicle in this case, like those in the prior case, was seized and administratively forfeited "on the mere assumption of unlawful activity.  The [Secret Service] never obtained a warrant or a judicial finding of probable cause, and has proceeded under a legal theory that has since been debunked, or seriously challenged, by this Court."  (Doc. 14 at 11)

In that prior case, this Court found insufficient the Government's showing of probable cause to seize two vehicles (and a substantial amount of money in the auto broker's bank account that had been seized by a warrant).  That case was a judicial forfeiture proceeding filed by the United States after the auto broker timely filed a "claim" under Section 983(a).  And the claimant's motion for release of the assets was supported by its principals' sworn affidavits.  If CNEST had filed a timely claim with the Secret Service, the United States would have been required to institute a judicial forfeiture action, in which CNEST could seek a hearing on its constitutional challenges to the vehicle's seizure.  But CNEST failed to do so, and instead chose to proceed with a petition for remission.

CNEST concedes that this Court lacks jurisdiction to review the merits of the administrative forfeiture of the vehicle.  CNEST's arguments that it was not engaged in illegal activity, that the vehicle was seized without a warrant, or that the Fifth Amendment requires the Secret Service to compensate it for the loss of its property, all go to the merits of the forfeiture.   In Valderrama v. United States, 417 F.3d 1189 (11th Cir. 2005), the court of appeals affirmed the dismissal of a claimant's lawsuit challenging an administrative forfeiture of an unendorsed check payable to the claimant. The claimant argued that the forfeiture was unlawful under applicable Customs statutes

because the check was not subject to summary forfeiture, and the court had jurisdiction to set aside agency action that is contrary to law.  The Eleventh Circuit rejected this argument and held: "Section 983(e) provides [the] exclusive remedy to challenge the administrative forfeiture.  The only issue this court can consider is whether [claimant] received the appropriate notice in sufficient time to contest the agency's action of summarily forfeiting the check.  And, the record clearly demonstrates that [claimant] received the appropriate notice of the seizure and the summary forfeiture actions taken by Customs."  Id. at 1196 (internal citation omitted).  The court also affirmed the district court's decision denying the claimant's equitable claim: "It is inappropriate for a court to exercise equitable jurisdiction to review the merits of a forfeiture matter when the petitioner elected to forego the procedures for pursuing an adequate remedy at law."  Id. at 1197 (quoting In re Matter of $67,470.00, 901 F.2d 1433, 1434 (11th Cir. 1990)).

See also, United States v. Artis, 172 Fed. Appx. 309, 311 (11th Cir. 2006), finding that after CAFRA, Rule 41(g) does not permit a challenge to an administrative forfeiture, even though prior to CAFRA's passage such motions were routinely treated as equitable actions against the Untied States.  To similar effect is Martin v. Leonhart, 717 F.Supp.2d 92 (D.D.C. 2010), where the district court dismissed claimants' lawsuit against the DEA, which had seized almost $20,000 cash from one of them during a random drug search on an Amtrak train. The claimants argued that there was no evidence that either of them was involved in drug trafficking, and that the money was seized unlawfully from them.  The district court held it lacked jurisdiction to review the merits of their complaint because they failed to file a timely claim with the DEA.

CNEST also challenges the Secret Service's "process" for reviewing its petition

for remission of the forfeiture, and the denial of its request for reconsideration.  CNEST argues this Court should exercise limited jurisdiction to determine if that process comported with the Fifth Amendment.  The fundamental requirements of due process are notice and an opportunity to be heard.  Dusenbery v. United States, 534 U.S. 161, 167-68 (2002).  CNEST was provided with both **actual** notice, and the opportunity to be heard by filing a timely claim to the vehicle.  The Court finds that CNEST's arguments that the Secret Service failed to fully consider the grounds for its remission petition, or that it summarily denied its request for reconsideration, are simply an attack on the merits of the Secret Service's decision, which this Court lacks jurisdiction to address.

Song's Claims Must Also Be Dismissed

Song alleges that he did not receive written notice of the seizure or forfeiture, and asks the Court to order the vehicle returned to him. The United States contends  that Song waived his right to notice when he voluntarily surrendered the vehicle on September 17, 2013.  But even if his written waiver was somehow ineffective, Song cannot satisfy the requirements of Section 983(e)(1(B), because he cannot plausibly argue that he "did not know or have reason to know of the seizure within sufficient time to file a timely claim."  The Secret Service agents seized the vehicle directly from Song, with his knowledge.

Song relies on the complaint's allegation, made under information and belief, that he was under duress and that his signature on the waiver form was not knowing or voluntary.  (Doc. 1, ¶21)  The United States has submitted a sworn affidavit from SA Schmitz contradicting these information and belief allegations.  Song has not submitted an affidavit or a declaration that rebuts or contradicts Agent Schmitz's sworn testimony,

and which might give rise to a genuine factual dispute about the circumstances of the encounter between Song and the agents.  The Court has considered Agent Schmitz's declaration and finds that is sufficient to rebut Song's unadorned information-and-belief allegations.

Even if Song had raised a genuine dispute about the written waiver he signed, the Court concludes that Song cannot satisfy the requirements of Section 983(e)(1)(B). The undisputed facts before the Court establish that he had actual knowledge of the seizure of the vehicle.  Cases applying that statute clearly hold that a claimant's "knowledge" of the seizure is not measured by whether or not the government sent a written notice to that person.  For instance, In re: Seizure of $143,265.78 from Comerica Checking Accts., 616 F.Supp.2d 699, 705 (E.D. Mich. 2009), aff'd 384 Fed. Appx. 471 (6th Cir., July 2, 2010), involved a challenge to the seizure of funds in bank accounts of an entity that the United States alleged was engaged in money laundering and visa forgery.  The accounts were held at Comerica Bank, and the bank held a security agreement with that entity.  A week after the seizure, an attorney for the bank contacted the United States Attorney concerning the bank's security interest, and asking to be kept apprised of the anticipated forfeiture proceedings.  The United States sent a written notice of the seizure and forfeiture to the bank branch where the accounts were maintained.  The bank did not file a claim within the required time, and later filed a petition for remission which was denied.  The district court held that the bank could not satisfy the requirements of Section 983(e) because "it had actual knowledge of the seizure; the government took the money from the accounts in the possession of the bank even before the forfeiture notice was sent." Id. at 705.  Even though the United

-15-

States did not dispute that the bank was an innocent owner, and that its attorney had been in contact with the U.S. attorney, the bank's failure to comply with the strict statutory requirements doomed its claim.

The same situation occurred in this case: Song cannot deny his actual knowledge of the seizure of the vehicle on the day it happened, long before the forfeiture notice was sent to CNEST on November 14, 2013.  Section 983(e)(1)(B) plainly states that it is knowledge of the **seizure**, and not of the forfeiture proceedings, that bars a claimant from relief under the statute if he fails to file a timely claim.

Song suggests that the Agreement to Surrender Property that he signed on September 17 did not inform him that the vehicle had been "seized," or of his right to file a claim in a forfeiture proceeding.  The form he signed plainly states that Song both relinquished his ownership rights, and waived his right to receive "notice of abandonment proceedings or civil/administrative forfeiture actions" with respect to the vehicle.  While it did not explain all of his potential rights regarding the vehicle, there can be no factual dispute that Song had actual knowledge of the seizure - the car was taken away by the Secret Service, and he signed the agreement acknowledging that fact.

Song's due process claims must also be dismissed because he had actual notice of the seizure of the vehicle, and could have asserted a timely claim.  Song agreed "not to file a claim or otherwise contest" any subsequent proceedings brought by the United States against the vehicle.  He did nothing to assert an interest in the vehicle  until May 23, 2014, after CNEST's petition for remission was denied.  His equitable claim seeking the return of the vehicle also lacks merit, because Section 983(e) is the exclusive avenue for obtaining that relief.

**CONCLUSION**

This case is the second one that has arrived on this Court's docket arising from the Secret Service's belief that certain automobile brokers are violating the mail and/or wire fraud statutes by purchasing luxury vehicles in the United States, and subsequently exporting those vehicles to other countries.  This case is factually and legally distinct from the previous case discussed above, however, because Plaintiffs failed to avail themselves of the exclusive statutory method by which to seek judicial review of the seizure of the vehicle.  Case law is clear that even those with arguably meritorious claims who fail to timely pursue statutory remedies may not seek federal judicial review of a civil administrative forfeiture.  Therefore, for all of the foregoing reasons, Plaintiffs' complaint is hereby dismissed.

SO ORDERED.

THIS CASE IS CLOSED.

DATED: March 16, 2015                          s/Sandra S. Beckwith
                                               Sandra S. Beckwith, Senior Judge
                                               United States District Court